[Crim. No. 458.   Fourth Appellate District.—August 20, 1940.]

THE PEOPLE, Respondent, v. JAKE HARRMAN, Appellant.

Edgar G. Langford for Appellant.

Earl Warren, Attorney-General, and Gilbert F. Nelson, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged under each of two counts with grand theft through the taking of money from one Mary E. Ege. Having been found guilty on both counts, he appeals from the judgment.

It is first contended that the evidence is insufficient to sustain the judgment. The appellant, who was 39 years old, struck up an acquaintance with Mrs. Ege, a widow 65 years of age, in a hotel lobby in San Diego on December 8, 1939. Thereafter he spent each evening with her and shortly before Christmas he agreed to marry her. On the second evening he told Mrs. Ege that his father had died in Illinois, leaving an estate of $75,000 which was to go to him and his sister and that the probating of the estate would be completed the following February. A few evenings later he told her that he and his father had been in the marble machine business; that there were 35 or 40 of these machines packed and ready for shipment in Springfield, Illinois; that his sister had put the machines under an attachment; that it would take $1,000 to get them released; that if he could get the machines to California he had arranged with a man in El Centro to put the machines in operation where they would make money rapidly; and that he had $750 but did not know where to get the other $250. After they had talked the matter over on several evenings, and after the appellant told Mrs. Ege that he had telephoned to Springfield, Illinois, and that everything was arranged, she drew $250 from her bank account and handed it to him.

Shortly after Christmas the appellant showed Mrs. Ege a telegram which he claimed to have received from Springfield, Illinois, saying it would be necessary for him to come there to sign some papers. About the same time he told her that he was going to Springfield on a bus, that when he got there he wanted to get a truck with which to bring the marble machines to California, and that when he got back here he could sell the truck and make money on it but that he had no money with which to buy the truck. Mrs. Ege cashed some bonds and gave him $450 to be used in bringing the marble machines to California. On January 3, 1940, the appellant took her with him to the bus station where he inquired as to the fare

and available routes to Springfield, Illinois. On the evening of that day he gave her a receipt for the full $700 he had received from her, told her that he was going to Springfield and would be back in two weeks, and arranged with her to write to him at Springfield, General Delivery. He left the next morning and Mrs. Ege later addressed three letters to him at Springfield all of which were returned unclaimed. He was arrested in a hotel lobby in Long Beach on February 6, 1940, where the officers found him talking to an elderly lady. On the trip to San Diego the arresting officer asked him if he did not have a pretty good racket "taking these widows" and he replied that before he came to this state he had "heard there were lots of widows in California, that they asked for it".

. The appellant took the stand and told about the same story as that told by Mrs. Ege, except that he denied having told her that his father had left an estate in Illinois or that he or his father's estate had any interest in the marble machines. He testified that he told her that there were some 35 or 40 marble machines in Springfield, Illinois, that were tied up in an estate and that he could get them very cheap, but did not tell her what estate it was. He admitted on the stand that he new nothing about these marble machines and testified that he was told about them by a "fellow" with whom he was not "acquainted", and that this fellow did not tell him "how much or anything". He further testified that Mrs. Ege "loaned me this $450 to add to the $250 that she gave me before, so that I could . . . get these slot machines started". He testified that he left San Diego on January 4, 1940, and went to Long Beach; that he remained there until he was arrested; that he lost $350 in a rummy game and an additional amount on another occasion; and that when he left San Diego he intended to go to Springfield, Illinois. When asked why he did not go there he replied: "Well, I just— the time passed pretty fast and so I just didn't get that far along yet, which it was only about three or four weeks." When arrested he told the officers that he had only $47 left. Evidence was introduced showing that the estate of appellant's father had never been probated in the county in Illinois in which he had said it was being probated.

■ It requires no comment on this evidence to disclose its sufficiency. The testimony of the appellant himself furnished ample corroboration, as did many circumstances which justi-

fied inferences of guilty intent. Many portions of the appellant's testimony were obviously unbelievable. For example, he testified that he had bought a bank draft for $250 which he had sent to a man in Springfield. He was unable to tell what bank he bought the draft from and did not know the address of the man to whom he said he had sent it. He said that this man was one with whom he was not acquainted, and that he had never received any receipt or letter from him.

The appellant complains of a portion of one instruction which stated that a promise made with no intention to perform might, under some circumstances, be made the basis of a criminal proceeding. It is argued that this was erroneous and reliance is placed upon a statement of this court in *People* v. *Jackson,* 24 Cal. App. (2d) 182 [74 Pac. (2d) 1085], to the effect that promises cannot support a conviction of grand theft as defined in section 484 of the Penal Code. The statement thus referred to was used in that case in connection with the consideration of certain representations which this court said ''were statements which looked to the future alone. They did not pretend to relate either to the present or to the past.'' On the other hand, it was held, in effect, in *People* v. *Ferguson,* 134 Cal. App. 41 [24 Pac. (2d) 965], that promises of future large returns from investments, when supported by false pretenses as to past or existing facts, were sufficient to constitute a criminal pretense.

We agree that this portion of this instruction should not have been given. However, if it be conceded that under some circumstances it would be sufficiently prejudicial to justify a reversal, especially in a close case, we think this result should not obtain here. The only promise of future action material here was the promise to use this money in a particular way, namely, in getting possession of certain marble machines so they could be put in operation. The appellant testified that Mrs. Ege loaned him the $700 for that purpose and there was, of course, an implied promise that he would use it in that manner. But this was so thoroughly connected and interwoven with false representations of past and existing facts that the two elements should not now be segregated for the purpose of strictly applying a technical rule of law. The appellant had represented that he and his father had operated these machines, that he had an interest in his father's estate and in these machines which were packed and ready for ship-

ment, that these had been tied up with an attachment, that he had been advised that he could release and secure possession of them for $1,000, that he had $750 of this amount, and that he had already arranged with a man in El Centro for a location for the machines. All of these representations were connected with and were a basis for the promise in question, and they so far outweigh the incidental promise that it cannot reasonably be supposed that the jury could have been misled by the instruction, or that it actually decided the issue in the belief that the appellant made a promise which he did not intend to keep, while refusing to believe that the false representations had been made.

It is next urged that the court erred, in another instruction, in referring to the written receipt which the appellant gave to Mrs. Ege as ''a false token''. It is argued that this was a genuine receipt and therefore not a false token within the meaning of section 1110 of the Penal Code (citing *People* v. *Carter*, 131 Cal. App. 177 [21 Pac. (2d) 129].) The court, in this instruction, was not referring to a false token or writing as a substitute for testimony or evidence otherwise required, as provided for in section 1110, but was merely saying that this memorandum was one of the things that could be considered as a corroborating circumstance. No attempt was made to use the memorandum for the purpose suggested in section 1110 and the court did instruct the jury that a conviction could not be had in this case except upon the testimony of two witnesses or of one witness together with corroborating circumstances. The appellant frankly admits in his brief that the matter here complained of would not justify a reversal.

Finally, complaint is made of a portion of an instruction which reads: ''On the other hand, of course, if you do not find her testimony is true, you will have to rely on circumstantial evidence and if that is insufficient, you will have to find him not guilty.''

This was erroneous and while at first blush it might seem prejudicial, as telling the jurors that even though they did not believe the testimony of the prosecuting witness they could convict upon circumstantial evidence alone, it is unreasonable to believe that it was so understood by the jury, or that the verdict was based upon such a rule of law. This was a por-

tion of a long instruction in which the court referred to the attitude of Mrs. Ege on the witness stand and to a portion of her testimony, in which she was obviously trying to protect the appellant, in the course of which she had made one statement which was proven to be untrue. In telling the jury that it might believe portions of this witness' testimony even though it disbelieved other portions, the court stated that if the jury believed, in the light of the other circumstances, this witness' testimony with respect to the manner in which the appellant obtained this money, it could accept that portion of her testimony and convict the defendant. The statement here complained of then followed. Obviously, the court intended to say that if the jury did not believe the material portions of the testimony of this witness there would be nothing left but circumstantial evidence, which was insufficient, and it would then be necessary to find a verdict of not guilty. While the language used is capable of a different construction it plainly appears that such was not intended since the court, in the preceding sentence, had stated that a conviction required both the acceptance of the story of this witness and a consideration of the surrounding circumstances. Moreover, in the preceding instruction, the court had fully gone into the matter of corroborating circumstances and had told the jury that corroborating circumstances alone were not enough upon which to convict, that the testimony of Mrs. Ege, standing alone, would also be insufficient, and that a conviction could not be had unless the making of the false pretense was proven both by her testimony and by corroborating circumstances.

While these errors might well be prejudicial in a close case, we are unable to hold that they justify a reversal, under the circumstances here appearing, in the light of the duty placed upon us by section 4½ of article VI of the Constitution. The guilt of the appellant was established by overwhelming evidence and, in fact, rather clearly appears from his own testimony. He admitted so much and his testimony was so obviously unreliable in connection with the few matters concerning which there was any conflict that it is unbelievable that the jury could have been misled by any error in the instructions, or that these could have affected the result. To suppose that any other verdict was possible would

be to question not merely the intelligence but the integrity of the jurors.

The judgment is affirmed.

Griffin, J., concurred.